E-FILED
Tuesday, 17 November, 2026 05:14:46 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| D'ANGELIS CHAMBERS,<br>Petitioner,<br><br>v.<br><br>JUSTIN MAHER, Warden,<br>Respondent. | Case No. 2:26-cv-2192 |

**Opinion & Order**

Now before the Court is Petitioner D'Angelis Chambers' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (D. 1).[1] For the reasons set forth *infra*, the Court DISMISSES Petitioner Chambers' Petition (D. 1), and DECLINES to issue a certificate of appealability.

**I**[2]

On December 30, 2018, Chambers fatally shot Renese Riley. A jury in the Circuit Court of Champaign County, Illinois, found Chambers guilty of first degree murder and the circuit court sentenced him to a total of 55 years of imprisonment.

At trial, the evidence established that two sisters, Demeisha and Denika, resided together in a second floor apartment within a three story building in Urbana, Illinois. *Illinois v. Chambers*, 2026 IL App (5th) 231148-U, ¶ 5. At the

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] Unless otherwise noted, the facts are taken from the undisputed facts in Respondent's Response, which are consistent with the official records from Petitioner's state court proceedings, which Respondent attached to the response (D. 14). *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."). The factual determinations of the state court are presumed to be correct, unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In his reply brief, Chambers objects to certain parts of Respondent's summary of the evidence and his objections are noted.

time of the murder, Chambers was dating Demeisha and frequently visited the apartment. Riley was the father of Denika's child and also frequently visited the apartment. *Id.*

Denika testified that in the early hours of December 30, 2018, Chambers and the sisters were at the apartment and an argument broke out.[3] *Id.* ¶ 6. She called Riley to pick her up. When he arrived, Riley remained outside at the buildings security gate and began shouting at Chambers to "come downstairs." *Id.* Riley was not able to get through the gate and into the building because he did not have a key. *Id.* Denika testified that she opened the gate and put an arm around Riley to try to calm him down. *Id.* He would not calm down, so closed the gate, which prevented Riley from entering. *Id.* She further testified that she had no intention of letting Riley into the building. *Id.*

Denika testified that while she was holding the gate, Chambers and Demeisha came down the stairs from the apartment and tried to open the gate while Denika was holding it closed. *Id.* Riley removed his jacket and hoodie and challenged Chambers to a physical altercation. Denika testified that Chambers attempted to push past the gate three times, succeeding on the third attempt. *Id.* Denika testified that Chambers went to Demeisha's vehicle, put something in the trunk, and then returned to fight Riley. *Id.* The two exchanged blows and, at one point, Riley knocked Chambers to the

---

[3] In his reply brief, Chambers "objects to [Respondent's] version of the evidence presented at trial." D. 15 at ECF p. 1. Chambers primarily objects to factual statements that were based on Denika's testimony, which Chambers argues was not credible in certain regards. Specifically, he argues that even though Denika said that Riley came to pick her up, "Riley arrived on foot. He did not own a car, he wasn't in a cab, he had no way of coming to pick her up in the middle of winter with a small child. She called him to come kill [Chambers]." D. 15 at ECF p. 2. Chambers also argues that only Denika testified that "before the two began fighting, [Chambers] walked to his car and did something and returned to engage in a fight. She's the only person who said that and its very inconsistent with her recorded statement that she gave the night of the incident." *Id.* He also reiterates his own version of events as presented at trial, which the Court summarizes below. However, with the clarification that these portions of Respondent's summary were drawn from Denika's testimony and that Chambers disputes her version of events, the Court finds that there is no dispute that the summary accurately states Denika's trial testimony.

ground. *Id.* Denika testified that Chambers stood back up, extended his arm and discharged a firearm towards Riley. Riley was not moving towards Chambers, was not reaching into his pocket, and he was at a distance that allowed Chambers to fully extend his arm. *Id.* After the shooting, Chambers and Demeisha drove away. *Id.* Denika also testified that she never saw Riley with a firearm. *Id.*

Denika testified that a few days before the murder, during Christmas, there was an "incident" between Riley and Chambers. *Id.* ¶ 7. Chambers and Demeisha were "irritated" when Demeisha told them that Riley had sent over three girls to fight Chambers. *Id.*

Two neighbors also witnessed the fight and also testified that Riley was not advancing towards Chambers when Chambers shot him. *Id.* ¶¶ 8, 10. One neighbor said Riley and Chambers were about six feet apart when Chambers drew a gun from his right side and shot Riley, *id.* ¶ 8, and the other testified that Riley was backing away when Chambers shot him, *id.* ¶ 10. Like Denika, both neighbors testified that they did not see Riley with a gun. *Id.* ¶ 8, 10, 12.

Chambers also testified at trial and presented alleged the shooting was in self-defense. *Id.* ¶¶ 13–16. Chambers testified that during the Christmas incident, Riley said that intended to have the "crib shot up," and walked past him with an aggressive demeanor that made Chambers think he wanted to "bump" his shoulder. *Id.* ¶ 13.

Chambers testified that after Riley arrived to the apartment building on the night of the murder, he heard Riley calling his name and saying, "bring your bitch ass outside." *Id.* ¶ 14. Chambers said he allowed Riley to shout, yell, and threaten him. *Id.* Then, Chambers went downstairs with the intent of getting in his car and leaving. *Id.* Chambers, admitted that he could have left the apartment through a different door, but claimed it would have been farther from where he parked his car. *Id.* ¶ 15. Once getting down to the gate, Chambers saw that Denika was holding the gate shut. *Id.* ¶ 16. Chambers decided to exit the gate when Riley said "I'm gonna catch your

bitch ass in the street." *Id.* Chambers testified that Riley showed him a firearm and was taunting him with it. *Id.* Chambers pushed the gate into Riley, causing Riley to step back and drop the gun. *Id.* Chambers picked up the gun as Demeisha went to the car. *Id.* Chambers and Riley then had a physical altercation, with Riley throwing the first punch. *Id.* Chambers testified that he did not think he could just d4ive away because "the fun still would have been there and he could have grabbed the gun and fired at me as I was getting in the car. *Id.*

As the fight proceeded, Chambers testified he was worried Riley would knock him out, retake the gun, and shoot him or Demeisha. *Id.* ¶ 17. He also said that Riley was advancing towards him when he shot the gun. *Id.* ¶ 18. He testified that the gun belonged to Denika and he had previously seen her with it. A magazine and ammunition matching the firearm was found at Chambers' parents' house, and he indicated it was not his. *Id.*

The jury was provided with jury instructions for self-defense, but convicted Chambers of first degree murder and unlawful possession of a weapon by a felon. The circuit court granted a motion to vacate his conviction of unlawful possession of a weapon by a felon due to a defective charging instrument. The court subsequently sentenced Chambers to 55 years' imprisonment.

Chambers filed an appeal raising issues not relevant here. The Illinois Appellate Court affirmed Chambers' conviction in February 2022 and denied his petition for rehearing in March 2022. *See People v. Chambers*, 2022 IL App (4th) 200299-U. Chambers attempted to file a late petition for leave to appeal (PLA) with the Illinois Supreme Court in March 2024, but the Illinois Supreme Court denied leave to file the late PLA on January 28, 2025.

In March 2023, Chambers filed a state postconviction petition raising three grounds of ineffective assistance of counsel: (1) trial counsel was ineffective for failing to raise a defense-of-dwelling defense or requesting a defense-of-dwelling

jury instruction; (2) trial counsel was ineffective for failing to present evidence that Chambers had been shot nine months before he shot Riley; and (3) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on appeal. The circuit court dismissed the petition as meritless.

On appeal, Chambers raised the same three issues and the Illinois Appellate Court affirmed the dismissal. *Chambers*, 2026 IL App (5th) 231148-U, ¶¶ 23, 50. The court found that "the witness testimony, including that of defendant, at trial discredited any theories founded on defense of dwelling, thereby indicating that it was trial strategy not to pursue that argument." *Id.* ¶ 36. The court also found that the evidence that Chambers was shot previously was irrelevant to the elements of a self-defense claim. *Id.* ¶ 41. Accordingly, the court found that trial court was not ineffective and appellate court was not ineffective for failing to raise meritless claims. *Id.* ¶¶ 46, 48. Chambers filed a PLA, which the Illinois Supreme Court denied in May 2026. *People v. Chambers*, No. 132958 (Ill. May 11, 2026).

Chambers filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 29, 2026. (D. 1). He raises the same three claims as he did in his state postconviction proceedings: (1)trial counsel was ineffective for not raising a defense-of-dwelling defense and requesting a corresponding jury instruction on that defense, *id.*at 5; (2) trial counsel was ineffective for not presenting evidence that petitioner was shot nine months before the challenged offense, id. at 6-7; and (3) appellate counsel was ineffective for not raising grounds 1 and 2 (among "many more" unspecified "instances of trial counsel's deficiencies") on direct appeal, *id.* at 8.

Respondent filed his answer (D. 13), arguing that Chambers' claims are barred by 28 U.S.C. § 2254(d). Chambers has filed a reply (D. 15). This Order now follows.

**II**

Federal habeas review is available "to correct only " 'extreme malfunctions' " in the resolution of federal issues by

the criminal justice systems of the sovereign States." *McCarthy v. Hernandez*, 608 U.S. 809, 818 (2026) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Thus, where a state court has adjudicated a petitioner's claims on the merits, pursuant to § 2254(d), "[a] federal court may grant a federal petition for habeas corpus only if the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Snow v. Pfister*, 880 F.3d 857, 863–64 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)); *see also Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (when a state court resolves a claim on the merits, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").

"[A] decision is deemed "contrary to" clearly established federal law if the state court reached 'a conclusion opposite to that' of the Supreme Court on a legal matter [ ] or if the state court arrived at an outcome in direct contradiction to a 'materially indistinguishable' case decided by the Supreme Court." *Gambaiani v. Greene,* 137 F.4th 627, 632 (7th Cir. 2025) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012) (quoting *Williams*, 529 U.S. at 407). However, "federal courts are cautious to grant relief, reviewing state-court factual findings with a healthy dose of deference. . . . The proper inquiry focuses [ ] on whether the alleged factual error is beyond debate." *Gambaiani,* 137 F.4th at 632. In conducting this review, courts must "look to the last reasoned state court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Pierce v.*

*Vanihel*, 93 F.4th 1036, 1044 (7th Cir. 2024) (internal quotations omitted).

Chambers raises a claim of ineffective assistance of counsel, making the review "'doubly deferential' because the underlying substantive legal standard—established in the Supreme Court's decision in *Strickland*—is itself highly deferential." *Ford v. Reagle*, 154 F.4th 884, 894 (7th Cir. 2025) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *see also Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland's* two-part test, a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. A petitioner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991).

Here the Court finds that the Illinois Appellate Court correctly stated the two parts of the *Strickland* test. *See Illinois v. Chambers,* 2026 IL App (5th) 231148-U, ¶ 25. Moreover, the Illinois Appellate Court reasonably applied this standard to the facts of the case for each of Chambers' claims.

Chambers first argues that his counsel should have raised a defense-of-dwelling defense. The Illinois Appellate Court found that the defense-of-dwelling defense requires the person to have "attempt[ed] to unlawfully entered the property." *Id.* ¶ 30. The court found that the evidence showed Riley did not attempt to enter the property. *Id.* ¶ 31. The evidence, including Chambers' own testimony, demonstrated that Riley never entered the apartment or apartment building, but remained on the other side of a locked gate. *Id.* Rather, it was Chambers who went outside the gate to confront Riley. *Id.*

Additionally, even if Riley had gone through the gate, the evidence does not show that it would have been unlawful because Denika had invited Riley to the apartment. *Id.* ¶ 32.

Chambers argues that the evidence did establish the defense-of-dwelling defense. He points to evidence that "[Riley] was outside of the gate threatening [Chambers and] he was located between [Chambers] and his car and was effectively placing him under unlawful arrest by telling him he would be assaulted if he attempted to enter his car and leave." D. 15 at ECF p. 5. However, Chambers' recitation of the defense-of-dwelling defense does not comport with Illinois law as explained by the Illinois Appellate Court. The defense-of-dwelling defense does not allow an individual to use deadly force against someone for "placing him under unlawful arrest." Instead, to assert the defense Chambers needed to show Riley "attempt[ed] to unlawfully enter the property." *Id.* ¶ 30. *See also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Chambers also asserts that "[i]f someone points a loaded firearm at a man while in the confides of his dwelling, the privilege to kill is triggered. Once triggered, a man may use as much force as he wants under the Castle Doctrine." D. 15 at ECF p. 5). Again, Chambers recitation does not comply with the defense-of-dwelling defense under Illinois law. Rather, Chambers appears to conflates the defense-of-dwelling defense with self-defense, which he was allowed to present at trial. And, Chambers is incorrect to the extent that he is arguing that a right to use self-defense continues indefinitely once triggered. *See, e.g., People v. Guja*, 2016 IL App (1st) 140046, ¶ 52 ("[I]f the defendant responds to a confrontation with such excessive force that he is no longer acting in self-defense but in retaliation, the excessive use of force renders the defendant the

aggressor, even if the other person involved actually commenced the confrontation.”).

Accordingly, the Court finds that the Illinois Appellate Court reasonably found that the evidence in this case did not support the defense-of-dwelling defense under Illinois law. And, without a valid defense-of-dwelling defense, the Illinois Appellate Court reasonably found that Chambers’ attorney’s performance was not deficient when he failed to seek a defense-of-dwelling defense jury instruction.

Similarly, the Illinois Appellate Court reasonably found that Chambers’ trial counsel was not ineffective for failing to present evidence that Chambers had been shot in the back nine months before the murder. Chambers argues that this evidence was relevant to self-defense. The Illinois Appellate Court found under Illinois law:

> “The elements of self-defense are that (1) unlawful force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; and (4) the use of force was necessary.” *People v. Grayson*, 321 Ill. App. 3d 397, 402 (2001). “Self-defense has both a subjective aspect and an objective one: the defendant must believe that a danger exists that requires the use of the force applied, the belief must be objectively reasonable, and the use of force must actually be necessary.” (Emphasis omitted.) *People v. Robinson*, 375 Ill. App. 3d 320, 335 (2007).

*Chambers*, 2026 IL App (5th) 231148-U, ¶ 41.

The Illinois Appellate Court found that evidence of the previous shooting could establish a “heightened alert for the necessity of self-defense,” but related only to his subjective belief of danger. *Id.* ¶ 42. The court found that presenting this evidence would be irrelevant overall because Chambers had not established the other elements of self-defense—particularly that there was imminent danger. *Id.* ¶ 45. Rather, Riley’s

statement that he would catch Chambers on the streets only established future potential harm and was insufficient to establish the necessity of self-defense. *Id.* ¶ 42.

Chambers argues in his reply that "actual danger is not the deciding factor" for self-defense. D. 15 at ECF p. 7. However, imminent danger is *one of* the deciding factors for self-defense because it is an element of the defense. Because Chambers could not show this element, the Illinois Appellate Court properly found evidence that he was on heighted alert for danger due to his previous shooting was irrelevant. The Illinois Appellate Court reasonably found that Chambers had not shown that his trial counsel's performance was deficient or that he was prejudiced by his counsel's failure to present a defense of dwelling defense or evidence of the previous shooting.

Finally, Chambers argues that his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel on appeal. However, since Chambers has failed to show that his trial counsel was ineffective, the Illinois Appellate Court rightly found that his arguments of ineffective assistance on appeal likewise fail. *Id.* ¶ 48; *See also Warren v. Baenen,* 712 F.3d 1090, 1104 (7th Cir. 2013) (appellate counsel is not ineffective for failing to raise meritless claim).

Accordingly, the Court finds that the Illinois Appellate Court's resolution of Chambers' claims is owed deference under 28 U.S.C. § 2254(d), and thus must be denied.

**III**

Should Chambers wish to appeal this decision, he must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This will hold true only when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (1995). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the

underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016). Here, Court does not find that reasonable jurists could disagree that Chambers' claims are barred from further review pursuant to 28 U.S.C. § 2254(d). Accordingly, the Court declines to issue a certificate of appealability.

## IV

Accordingly, for the reasons stated *supra,* the Court DISMISSES WITH PREJUDICE Petitioner D'Angelis Chambers' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (D. 1). The Court DECLINES to issue a certificate of appealability. The Clerk is DIRECTED to issue judgment in favor of Respondent and CLOSE the case.

*It is so ordered.*

Entered on November 17, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE